UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL A. JEFFRIES,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C17-5381 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Michael A. Jeffries seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Mr. Jeffries contends the ALJ erred in rejecting medical opinions indicating standing, sitting and stooping limitations, and in determining how his need to sit or stand at will would affect the occupational base. Dkt. 11.[1] As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Mr. Jeffries is currently 49 years old, has at least a high school education, and has worked

---

[1] Mr. Jeffries' reply brief expressly waives errors on additional grounds that were raised in the opening brief, and thus the Court will not address those. See Dkt. 13 at 1.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

as a compliance director. Tr. 28. On May 29, 2013, Mr. Jeffries applied for benefits, alleging disability as of November 30, 2010. Tr. 17. His applications were denied initially and on reconsideration. *Id*. After the ALJ conducted a hearing on October 22, 2015, the ALJ issued a decision finding Mr. Jeffries not disabled. Tr. 17-30.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Jeffries has not worked since the alleged onset date.

**Step two:** He has the following severe impairments: degenerative disc disease, major depressive disorder, general anxiety disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Mr. Jeffries can stand six hours, sit six hours, and "needs a sit/stand option at will meaning sitting no more than 30 to 45 minutes at one time." Tr. 21. He can lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should not climb ladders, ropes or scaffolds, and should avoid concentrated exposure to extreme conditions and hazards. He can perform simple, routine tasks and more detailed or complex tasks at a moderate pace. He should only have occasional brief, superficial interactions with the general public and coworkers. He can accept supervision and minimal changes to the work setting.

**Step four:** Mr. Jeffries cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that he can perform, Mr. Jeffries is not disabled.

Tr. 19-28. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[4]

## DISCUSSION

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

A. **Stand/Walk Limitation**

In February 2014, based on a diagnosis of a severe spine disorder, nonexamining physician Robert Bernardez-Fu, M.D., opined that Mr. Jeffries' "low back" impairments would limit him to standing and/or walking for a total of two hours out of an 8-hour work day. Tr. 172, 175-76.

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)). All of the determinative findings by the ALJ must be supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The ALJ accorded "significant weight" to all of Dr. Bernardez-Fu's opinion except the two-hour limitation on standing/walking. Tr. 25-26. The ALJ rejected the limitation because (1) Dr. Bernardez-Fu did not review medical records showing that Mr. Jeffries' pain medication use declined and that his lower extremity strength and range of motion were intact, and (2) Mr. Jeffries testified that he stands much of the day. Tr. 26. The Court concludes that while the first reason is erroneous, Mr. Jeffries' testimony provides a specific reason, supported by substantial

evidence, to discount Dr. Bernardez-Fu's opined two-hour stand/walk limitation.

1. Medical Records

In his briefing, Mr. Jeffries argues his medication use did not decline between Dr. Bernardez-Fu's February 2014 opinion and the October 2015 hearing. He also contends that, because the limitation was based on his lower back impairments, intact leg strength and range of motion are not relevant to discount the opinion. Dkt. 11 at 11.

    a. Pain Medication Use

Mr. Jeffries was prescribed Flexeril (cyclobenzaprine) and Norco (hydrocodone-acetaminophen) for pain. *See*, *e.g.*, Tr. 495. In 2014, treatment notes show that Mr. Jeffries reported taking pain medication at least weekly: "once or twice a week" in March 2014, "about 2-3 times a week" in April 2014, and "about once or twice a week" in May 2014. Tr. 473, 499, 494. In 2015, however, his use was less regular. In May 2015 he was "[n]ot taking Flexeril frequently" and had "not taken Norco recently…." Tr. 549. And in July 2015 he reported "[i]nfrequently tak[ing] Norco and Flexeril…." Tr. 554.[5]

Mr. Jeffries contends the ALJ erred in concluding that "infrequently" is less than "about once or twice per week." Dkt. 11 at 9, Dkt. 13 at 2.[6] Even assuming that "infrequently" means less-than-weekly use, there is no evidence that this distinction reflects a significant improvement

---

[5] Mr. Jeffries argues that his concern about avoiding addiction to pain medication fully explained his minimal use. Dkt. 11 at 10. Even assuming that is true, it does not explain why his use declined between 2014 and 2015. There is no evidence that his concern about addiction changed in that time.

[6] Mr. Jeffries' briefing argues that he testified at the hearing that he took pain medication half the week. Dkt. 13 at 2 (citing Tr. 48, 60). In fact, he testified that he takes it once a day and during pain spikes. Tr. 48. He did testify that half the week are "bad days" when he cannot function well, and that he uses as little pain medication as possible. Tr. 59-60. But, without more, those two statements cannot be combined to mean that he uses pain medication half the days of the week.

in Mr. Jeffries' impairments or his RFC. The ALJ apparently inferred from a sparse record that the decline in pain medication use was significant, and further inferred that the decline was due solely or largely to a significant improvement in Mr. Jeffries' impairments, which in turn improved his RFC. This chain of inferences is too speculative to be upheld as "inferences reasonably drawn from the record." *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). The Court therefore finds that the ALJ erred in discounting Dr. Bernardez-Fu's opinion based on a decline in pain medication use.

          b. Lower Extremity Findings

Mr. Jeffries contends that Dr. Bernardez-Fu's stand/walk limitation is not undermined by treatment notes showing normal lower extremity strength and range of motion because Dr. Bernardez-Fu was aware of those records and, in any case, the limitation is based on lower back issues not reflected in lower extremity testing. Dkt. 11 at 10-11. The Commissioner fails to address the relevance argument, and simply points to treatment records after Dr. Bernardez-Fu's February 2014 opinion that show normal lower extremity strength and range of motion. Dkt. 12 at 5 (citing Tr. 495, 517, 546, 551).[7] Mr. Jeffries cites an August 2013 record Dr. Bernardez-Fu had available to him that showed normal lower extremity strength and range of motion. Tr. 456.

---

[7] The Commissioner argues Dr. Bernardez-Fu's opinion was inconsistent with the record, citing treatment notes stating that Mr. Jeffries reported his back pain had improved and he was able to do "usual activities" after treatment for an injury. Tr. 461. Without knowing what those usual activities were or how much pain he remained in, this record is unhelpful. Moreover, the ALJ did not rely on this evidence and the Commissioner's argument is therefore an improper post-hoc rationalization that this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

Because the record indicates that Dr. Bernardez-Fu was aware of the normal lower extremity findings, substantial evidence does not support the ALJ's finding that lack of awareness undermines his opinion. Moreover, the ALJ does not explain how her interpretation, rather than Dr. Bernardez-Fu's, of how the lower extremity findings relate to ability to stand are correct. *See Reddick*, 157 F.3d at 725 (An "ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (ALJ cannot arbitrarily substitute her own judgment for competent medical opinion, and must not succumb to the temptation to play doctor and make her own independent medical findings.).

The Court therefore concludes that the ALJ erred in discounting Dr. Bernardez-Fu's opinion based on lower extremity findings.

2. <u>Mr. Jeffries' Testimony about Standing</u>

The ALJ's final reason to discount Dr. Bernardez-Fu's two-hour stand/walk limitation was that Mr. Jeffries "testified that he spends much of the day standing; an indication that he can stand for longer periods than the consultant opined." Tr. 26.

Mr. Jeffries testified that he cannot bend, lift, or carry much and "can basically stand and that's about it right now." Tr. 47. When asked what chores he performs, he said he sweeps and can do "[a]nything that's standing." Tr. 49-50. At times when he is "able to walk" he will use the gas blower for about 10 minutes. Tr. 50. He is able to stand "about a half hour or so" and then needs to "move around, lean on something [or s]tretch a little." Tr. 61. Standing is better

than sitting, and as long as he can "lean on something or move around" he does not sit down at home. *Id.*

The ALJ is responsible for resolving any ambiguities that might exist and may make inferences reasonably drawn from the record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Batson*, 359 F.3d at 1193. Mr. Jeffries' testimony shows that he can stand for 30 minutes at a time, and suggests that he can do so multiple times a day. The ALJ reasonably inferred that he could stand for a total of more than two hours a day.

Mr. Jeffries argues conclusorily that his testimony cannot support an RFC of standing six hours a day. However, at issue is Dr. Bernardez-Fu's opined limitation of two hours standing/walking. Mr. Jeffries' testimony is substantial evidence to discount the opined limitation. An ALJ considers the record as a whole in determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). Because the ALJ provided a legally sufficient reason to discount the two-hour stand/walk limitation, Mr. Jeffries has not met his burden to show error in the ALJ's assessment of that opinion. And he offers no argument that the remaining record is inconsistent with an RFC with a six-hour stand/walk limit.

The Court concludes the ALJ did not err in discounting Dr. Bernardez-Fu's two-hour stand/walk limitation based on Mr. Jeffries' testimony. Inclusion of other, erroneous reasons is harmless error. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where an ALJ provides at least one valid reason supported by substantial evidence to discount a claimant's credibility, inclusion of other erroneous reasons is harmless).

**B.     Sitting and Stooping Limitations**

In a September 2015 letter, treating physician Camille Y. Chandler, D.O., opined that Mr. Jeffries could maintain neither "sedentary jobs that would require prolonged sitting" nor jobs that

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 7

require stooping. Tr. 537. Dr. Chandler based her opinion on a diagnosis of "chronic back pain related to a herniated lumbar disc." *Id*. She stated that resulting symptoms included "weakness and numbness" in the left leg, which in turn make Mr. Jeffries "prone to falls." *Id*.[8] The pain plus the leg weakness and numbness "have a significant impact on his daily activities." *Id.*

Dr. Chandler's opinion is contradicted by Dr. Bernardez-Fu's opinion that Mr. Jeffries could sit for six hours and stoop occasionally. Tr. 175. An ALJ may reject a treating physician's contradicted opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ discounted Dr. Chandler's opinion on the grounds that it was unsupported by the medical record because physical exams consistently show normal leg muscle strength and Mr. Jeffries had reported no recent falls. Tr. 26.

Mr. Jeffries argues that Dr. Chandler based the limitations on his back pain, not leg strength or falls. Dkt. 13 at 5. Mr. Jeffries cites *Anderson*, where examining physician "Dr. Pellicer made her determination regarding Plaintiff's ability to lift and carry based upon Plaintiff's chronic knee and back pain, not on Plaintiff's scores on muscle strength. … The ALJ did not explain how muscle strength—upon which Dr. Pellicer did not base her opinion …— undermines her determination regarding Plaintiff's ability to lift and carry. Thus, the ALJ's statement, without further analysis or explanation, lacks the specificity required by the Court." *Anderson v. Colvin*, No. 3:16-CV-05409-DWC, 2016 WL 7422298, at *3 (W.D. Wash. Dec. 23,

---

[8] In a 2014 letter consistent with her 2015 opinion, Dr. Chandler diagnosed Mr. Jeffries with "chronic back pain related to a herniated lumbar disc" that caused "weakness and numbness in his lower extremities." Tr. 505.

2016). But here, Dr. Chandler's opinion was based on a diagnosis of a herniated disc that caused leg weakness and falls. Evidence undermining leg weakness and falls undermines the reliability of Dr. Chandler's opinion.

Mr. Jeffries also argues that his underlying impairments remain even though he has altered his behavior to reduce the likelihood of falls, and that leg muscle strength tests in isolation do not reflect the overall weakness of his legs. Dkt. 11 at 15-16. The Court may not reweigh the evidence, and if the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. It is certainly *possible* that Mr. Jeffries experiences leg weakness because of something other than his leg muscles; in addition to muscles, legs have nerves and bones, among other things, any of which could be weak. But *possible* is not the standard here. The ALJ cited substantial evidence—normal muscle strength—that undermines Dr. Chandler's opinion that leg weakness significantly impacts his daily activities. Similarly, it is possible that Mr. Jeffries has altered his behavior to make falls less likely. But evidence that Mr. Jeffries has had no recent falls is substantial evidence undermining Dr. Chandler's opinion that the herniated disc causes lower extremity weakness that in turn makes Mr. Jeffries prone to falls. The ALJ's interpretation of the evidence is rational and must be upheld.

The Court concludes that the ALJ did not err in rejecting Dr. Chandler's opinion limiting sitting and stooping.

**C. Sit/Stand Option[9]**

The ALJ determined that Mr. Jeffries has the RFC to "stand six hours total in an eight-

---

[9] The parties agree that the ALJ's decision misstated that a 1/3 erosion of the occupational base was due to a sit/stand option, when the VE's testimony established that the 1/3 erosion was due

hour workday … and sit six hours total in an eight-hour workday [but] needs a sit/stand option at will meaning sitting no more than 30 to 45 minutes at one time." Tr. 21. Mr. Jeffries contends that the RFC is internally inconsistent and not supported by substantial evidence, because the Ninth Circuit has ruled that a "need to sit and stand at will is incompatible with the ability to either sit or stand for six hours in an eight-hour workday." *Perez v. Astrue*, 250 Fed. Appx. 774, 776 (9th Cir. 2007). The Commissioner's briefing does not address *Perez*, an unpublished and nonbinding opinion. The court in *Perez*, however, relied on factual findings not present here. Two vocational experts testified in that case that "the need to alternate between sitting and standing at will for anything more than a momentary reprieve would preclude" all work the ALJ relied on in the step-five analysis. 250 Fed. Appx. at 776. But here, the VE testified that the sit/stand option the ALJ described would not preclude the three representative occupations the ALJ relied on in the step-five analysis. Tr. 86, 89-91.

Mr. Jeffries appears to argue that because "at will" implies at the person's choosing, it is necessarily inconsistent with standing or sitting up to six hours. While the meaning of "at will" may be arguable, in this case the ALJ clarified her use of the term in the same sentence: "meaning sitting no more than 30 to 45 minutes at one time." Tr. 21. Mr. Jeffries cites two Social Security Rulings establishing that determining how sit/stand options affect the occupational base depends on the specific needs of the claimant and usually requires VE

---

to other restrictions. *See* Tr. 29, Dkt. 11 at 16-17, Dkt. 12 at 7-8. Mr. Jeffries contends that the ALJ may have meant an additional 1/3 erosion due to the sit/stand option. Dkt. 11 at 17-18. There is no support for this speculation. The ALJ made an error that amounts to little more than a typographical error; her reasoning is clearly discernable and thus the error does not undermine her decision. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (a court must uphold an ALJ's decision, despite a legal error, where "the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity").

testimony.  SSR 83-12 states that a person who "must alternate periods of sitting and standing" is not capable of "the prolonged standing or walking contemplated for *most* light work. … Unskilled types of jobs are particularly structured so that a person cannot *ordinarily* sit or stand at will."  SSR 83-13, available at 1983 WL 31253 at *4 (emphasis added).  The ruling goes on to state, however, that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."  *Id.*  That is exactly what happened here.  The ALJ relied on a VE to clarify how the sit/stand option would affect the occupational base.

Similarly, SSR 96-9 provides that the unskilled sedentary occupational base will be eroded by a need to alternate sitting and standing, and Mr. Jeffries argues that the light occupational base would be similarly eroded.  SSR 96-9, available at 1996 WL 374185 at *7.  But the ruling states that the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" and recommends consulting a VE.  *Id.*  The VE here testified that adding a sedentary limitation to the sit/stand option would preclude the representative occupations because "typically workers engaged in sedentary employment … are not on their feet up to six hours in a workday."  Tr. 92.  Light work, on the other hand, is consistent with six hours standing or walking.  20 C.F.R. § 404.1567(b) (the light category includes work that "requires a good deal of walking or standing").  The VE's testimony establishes that the representative occupations the ALJ relied on could be performed by a person with the RFC to stand six hours a day with a sit/stand option.  Tr. 86, 89-91.

The Court concludes that the ALJ did not err in accounting for the effect of a sit/stand option on the occupational base.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 11

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 3rd day of May, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge